IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW F.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 24 C 11175 |
| v. | ) |
| | ) Magistrate Judge Gabriel A. Fuentes |
| FRANK BISIGNANO, | ) |
| Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**[3]

Before the Court is Andrew F.'s brief in support of reversing and remanding the Commissioner's decision denying his application for Supplemental Security Income ("SSI") (D.E. 15) and Defendant's memorandum in support of his motion for summary judgment to affirm the Commissioner's decision (D.E. 18).

**I.      Procedural History**

Plaintiff applied for SSI on April 21, 2022, alleging a disability onset date of April 21, 2022. (R. 10.) After a hearing, the Administrative Law Judge ("ALJ") issued a written decision

---

[1] The Court in this order is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] The Court substitutes Frank Bisignano for his immediate predecessor, Leland Dudek, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On November 12, 2024, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 8.)

denying Plaintiff's application on May 23, 2024, finding him not disabled under the Social Security Act (the "Act").[4] (R. 10-22.) This appeal followed.

## II. The ALJ Decision

The ALJ applied the Social Security Administration's ("SSA") five-step sequential evaluation process to Plaintiff's claims. At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date ("AOD") of April 21, 2022.[5] (R. 12.) At Step Two, the ALJ determined that Plaintiff had the severe impairments of chronic obstructive pulmonary disease ("COPD"), mild degenerative disc disease ("DDD") of the lumbar spine, cervical spondylosis of the cervical spine, osteoarthritis ("OA") of the bilateral hips, OA of the bilateral knees, restless leg syndrome ("RLS"), and fibromyalgia. (*Id.*) At Step Three, the ALJ found that Plaintiff's impairments alone or in combination did not meet or medically equal any Listing. (R. 13.) The ALJ assessed Plaintiff as having a residual functional capacity ("RFC") to perform light work with the following limitations:

> occasionally climb ramps or stairs but never ladders, ropes, or scaffolds; occasionally stoop, kneel, and crouch, but never crawl; frequently push or pull with the bilateral upper extremities; frequently handle or finger bilaterally; must avoid unprotected heights and dangerous moving machinery; and can tolerate frequent exposure to irritants and chemicals.

(R. 15.)

---

[4] The Appeals Council subsequently denied review of the opinion (R. 1-6), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

[5] The ALJ recognized that Plaintiff has a hire date of November 2, 2022, with Addus Healthcare Inc. as a home care aide/caretaker for his mother, but the monthly averages of the earnings fall below the earnings guidelines for substantial gainful activity, consistent with Plaintiff's testimony of working on a part-time basis. (R. 12.) Consistent with this information, Plaintiff represented on his *in forma pauperis* application filed October 30, 2024, that he is employed by Addus with monthly take-home pay of $800. (doc. # 2 at 1.)

At Step Four, the ALJ found that Plaintiff was not capable of performing past relevant work as a material handler. (R. 20.) At Step Five, the ALJ found Plaintiff capable of performing other jobs that exist in significant numbers in the national economy such as cleaner, cashier, and sorter.[6] (R. 21.) Thus, the ALJ determined that Plaintiff was not disabled under the Act. (R. 22.)

### III. Legal Standard

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054; *see Thorlton v. King*, 127 F.4th 1078, 1080 (7th Cir. 2025) (reiterating that Seventh Circuit "review proceeds with a light touch—not holding ALJs to an overly demanding evidentiary standard and in turn reinforcing that claimants bear the affirmative burden of proving their disability"). The Seventh Circuit has clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with

---

[6] Although the ALJ listed "sorter, DOT code 222.687-022" as a job Plaintiff is capable of performing (R. 21), this DOT code reveals more specifically the title is "Routing Clerk (clerical)" and describes work as a conveyer belt package sorter and may be known as a mail sorter. In other words, the ALJ did not rely on the purported availability of work as a "nut sorter," an assertion that the Court in the past has found execrable. *See Thomas D. v. Kijakazi,* No. 20 C 2683, 2023 WL 2561614, at *8-10 (N.D. Ill. Mar. 17, 2023).

3

enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

IV. Analysis

    **A. The Court Cannot Find that the ALJ's Decision Was Supported By Substantial Evidence Amid a Significant Flaw in the ALJ's Examination of the Medical Record.**

Plaintiff contends the ALJ erred in three aspects in rendering the decision: (1) the ALJ cherry-picked evidence and impermissibly played doctor when she concluded Plaintiff can perform full-time light work without either a cane or further limitation in his ability to stand and walk; (2) the ALJ committed harmful legal error dismissing the opinion of treating physician Ellen Voronov, M.D., whose opinion the state agency physicians were not provided; and (3) the ALJ's credibility assessment was patently wrong. (D.E. 15: Pl. Br. in Supp. of Reversing and Remanding the Comm'r's Decision ("Pl. Mem.") at 5, 9, 11.) Because we remand based on issue two, which overlaps to a certain degree with issue one, we do not reach Plaintiff's other arguments.

Plaintiff argues that the ALJ erred when the ALJ interpreted the opinion of his treating physiatrist (physical medicine and rehabilitation specialist) Dr. Vornov, without medical scrutiny. (Pl. Mem. at 9-11). It is unclear to this Court whether Dr. Vornov's opinion was provided to the state agency physician, as Plaintiff claims it was not, but it is undisputed that the state agency physician on reconsideration did not address the opinion. Regardless, the Plaintiff argues that the ALJ played doctor when she interpreted medical evidence without medical scrutiny. (Pl. Mem. at 11).

4

By way of background, Plaintiff testified that he experiences chronic back pain that radiates to his hips and thighs at a rating of 8 out of 10 on the pain scale. (R. 38-39). He underwent lumbar spinal fusion surgery in 2014, but he testified that this surgery failed to help his pain. (R. 39, 769). After a motor vehicle accident in December 2020 reportedly exacerbated his pain, his treatment included physical therapy, aquatic therapy, trigger point massages, epidural steroid injections, an H-wave (pain relief device), and Norco (pain reliever), but Plaintiff stated that he did not get substantial long-term relief from this treatment. (R. 345). Plaintiff points out that notes from his physical therapy sessions in April and May 2021, indicate "using a cane during walking so he does not cause further compensation for long lasting weakness he has had for ten years" and that he presented to physical therapy with a cane on May 4, 2021. (Pl. Mem. at 3, citing R., 631-32, 636, and 653-54). But Plaintiff never explains what triggered his AOD and the filing of his application for SSI almost one year later on April 21, 2022. (*See* Pl. Mem. at 3.) The ALJ attempted to fill in the evidentiary gap during that time frame, pointing to a report dated April 21, 2022 (the AOD) of Plaintiff having shortness of breath, which felt "a little better" with medication. (R. 16, citing R. 1000). The ALJ continued that later in April 2022, Plaintiff reported episodes of shortness of breath, but his recent pulmonary function test was normal (R. 521) and his exam showed no distress and no deficits throughout his entire body except for some hip tenderness. (R. 16).

Turning to the doctor's opinion at issue, the ALJ recognized that on March 15, 2023, Plaintiff presented for an initial evaluation to physiatrist, Dr. Voronov, on referral from his rheumatologist, Dr. Faseehuddin. (Pl. Mem. at 3, citing R. 800-809, 811; R. 18-19, citing R. 801). Dr. Voronov reviewed Plaintiff's 2021 MRI of his lumbar spine and on examination noted that Plaintiff had 11 out of 18 tender points. (R. 18, 19, 800-809). The ALJ noted that this January 2021 MRI of Plaintiff's thoracic spine was normal and of his cervical spine showed cervical spondylosis.

5

(R. 16, citing R. 762-63). Just six days later, on March 21, 2023, the ALJ noted that Dr. Voronov completed a Physical Medical Source Statement concluding that Plaintiff must use a cane for occasional standing and walking due to his pain. (R. 19, citing R. 777-81, specifically R. 779). Dr. Voronov diagnosed Plaintiff with, among other things, fibromyalgia, chronic pain, low back pain, cervicalgia (neck pain), and history of lumbar fusion (R. 777) and opined that due to these impairments, Plaintiff was limited to a combined standing and walking of less than two hours in an eight-hour workday, he would be off task 20 percent of the workday, and he would be absent from work about three days per month. (R. 19, citing R. 778, 780).

The ALJ found Dr. Voronov's opinion was "generally unpersuasive." First, the ALJ pointed out that despite opining that Plaintiff must use an assistive device, Dr. Voronov made no mention of use of a cane or any type of assistive device in her notes from the initial consultation only six days prior. (R. 19). The ALJ added that although Plaintiff reported widespread pain, the exam listed no deficits except the 11 out of 18 tender points;[7] Plaintiff was able to complete all of his activities of daily living; and Dr. Voronov recommended only conservative treatment, including therapy and medication, in her opinion. (*Id.*, citing R. 805-07). The ALJ further noted that after she issued her opinion in March, the notes from Plaintiff's next appointment with Dr. Voronov in August 2023 had the same exam results, ability to perform activities of daily living, and recommendations for conservative treatment. (*Id.*, citing R. 922).

Under 20 C.F.R. § 404.1520c, the most important factors for the ALJ to evaluate in determining the persuasiveness of medical opinion evidence are the supportability and consistency both internally and with the record as a whole. The ALJ must also consider the treating

---

[7] The test for fibromyalgia involves pressing down on eighteen fixed locations on the body, and, generally, if the patient flinches at eleven or more locations, he is deemed to have fibromyalgia. *Swiecichowski v. Dudek*, 133 F.4th 751, 754 n.1 (7th Cir. 2025), citing *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017); *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).

6

practitioner's relationship with the claimant, specialization, as well as other factors, but an explanation of the ALJ's consideration of these additional factors does not need to be presented within the ALJ's opinion. 20 C.F.R. § 404.1520c(b)(2). Here, the ALJ found Dr. Voronov's opinion "generally unpersuasive," stating that it was unsupported due to the limited frequency and length of treatment before providing the opinion as well as the treatment notes, specifically that the walking, standing, and assistive device limitations were unsupported by Dr. Voronov's treatment notes because both of her exams of Plaintiff showed a normal gait. (R. 20, citing R. 805, 921).

Further, the ALJ explained that the walking and standing limitations were inconsistent with the January 2023 internal medicine consultative exam that showed an antalgic gait but an ability to walk 50 feet without an assistive device. (R. 20, citing R. 768-70). The ALJ explained that the consultative exam also showed no ability to do heel-to-toe walk, hop on one leg bilaterally, moderate difficulty with squatting/rising, partially reduced range of motion in his lumbar spine and hips, and positive straight leg raise testing. (R. 17, citing R. 768-75). The ALJ also recognized Plaintiff's report during the consultative exam that he required using a cane at times but that he was also able to cook meals, vacuum, and shop. (*Id.*) This analysis may have been enough to affirm the ALJ's opinion had the state agency physician on reconsideration considered the medical source opinion, but alas, he did not.

The issue of remand or affirmance in this case hinges on the state agency physician, Reynaldo Gotanco, M.D., and what, if any, medical source opinion(s) he reviewed.[8] Although Dr.

---

[8] The Court notes that the state agency physician's report on reconsideration indicates that Plaintiff has not worked since last completing a disability report and has not performed work after the AOD. (R. at 122). On remand, this information shall be updated, and any state agency physician or medical expert shall be provided with the dates and particularities of Plaintiff's part-time work as a home care aide for his mother. (*See* R. 12, citing R. 265, 282, 422-56; R. 50-51,53; doc. # 2).

7

Gotanco's August 22, 2023 report at the reconsideration level discusses the March 15, 2023, physiatry examination noting for example chronic pain, cervicalgia, history of lumbar fusion, and strength five out of five throughout (R. 124, 127), the report does not reference Dr. Voronov's March 21, 2023 Physical Medical Source Statement. (R. 125). Specifically, when asked in the questionnaire to evaluate and reconcile medical opinions, Dr. Gotanco wrote "[t]here is no indication that there is a medical opinion from any medical source." (R. 125). This is incorrect, and highly concerning, as was Dr. Gotanco's statement that the additional records received at the reconsideration level do not indicate use of an assistive device. (R. 127). This flies in the face of Dr. Voronov's statement that a cane was needed due to Plaintiff's pain. (R. 779).

The fact that the state agency physician on reconsideration, Dr. Gotanco, did not review Dr. Voronov's March 21, 2023, Physical Medical Source Statement raises two issues. First, despite Plaintiff's brief relying heavily on this unreviewed statement (Pl. Mem. at 9-11), the Commissioner failed to address this argument, and it is therefore deemed waived. *Milhelm v. Kijakazi*, 52 F.4th 688, 693 (7th Cir. 2022) (arguments not raised before the district court are waived). To be clear, the Commissioner argued that the ALJ properly evaluated and found unpersuasive the medical opinion from Dr. Voronov. (D.E. 18: Def. Mem. in Supp. of Mot. for Summ. J. ("Def. Mem.") at 5-7.) But the Commissioner neglected to even mention the state agency physician's report on reconsideration and shockingly avoided: 1) any discussion of Dr. Gotanco's remarks that there was no medical opinion provided despite Dr. Voronov's preparation of such an opinion, and 2) Dr. Gotanco's statement that no additional records received indicated use of an assistive device despite Plaintiff's second argument relying almost entirely on this missing opinion. The failure by the Commissioner to address Dr. Gotanco's incorrect references to key questions in his opinion leaves a void in the Commissioner's argument, amounting to waiver.

8

Second, even if the Commissioner had not waived this issue, the Seventh Circuit has repeatedly stated that an ALJ may not "play[] doctor and interpret new and potentially decisive medical evidence without medical scrutiny." *Kemplen v. Saul*, 844 F.App'x. 883, 887 (7th Cir. 2021), quoting *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (internal quotation marks omitted) (finding that the "ALJ impermissibly assessed the MRI on his own without the assistance of a medical expert"). "It is well-established that ALJs may not rely on a state agency consultant's assessment if later evidence 'reasonably could have changed' the opinion." *Baptist v. Kijakazi*, 74 F.4th 437, 442 (7th Cir. 2023), citing *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018). To be clear, not all new evidence, or in this case, missed evidence, will necessitate a remand. *Kemplen*, 844 F.App'x. at 887. "The issue, then, comes down to whether the new information 'changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician and by evaluating himself the significance of [the overlooked] report,' or whether the updated information was minor enough that the ALJ did not need to seek a second opinion." *Kemplen*, 844 F.App'x. at 887, quoting *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016).

Although a close call, Dr. Voronov's March 21, 2023, Physical Medical Source Statement contained a significant and potentially decisive finding – the need for a cane. This information could reasonably "change[] the picture" of the reviewing physician's opinion especially since the reviewing physician, Dr. Gotanco, specifically noted "no indication that there is a medical opinion from any source" (R. 125) and referenced that the additional records received at the reconsideration level do *not* indicate use of an assistive device. (R. 127); *Kemplen*, 844 F.App'x. at 887; *Moreno*, 882 F.3d at 728. The ALJ found Dr. Gotanco's opinion (along with the opinion of the State Agency medical consultant at the initial level dated February 10, 2023 and prior to Dr. Voronov's

9

examination) "somewhat persuasive" because the more restrictive limitations of light work with occasionally performing all postural except for unlimited balancing, and avoiding concentrated exposure to pulmonary irritants and hazards justified but that the record also supports adding reaching and manipulative limitations to accommodate Plaintiff's alleged pain and other symptoms. (R. 19). The ALJ determined that Dr. Voronov's opinion is "generally unpersuasive." (R. 19).

The ALJ, along with this Court, in this rare situation is not qualified to play doctor and determine what Dr. Gotanco would have determined if he had been provided with Dr. Voronov's medical source statement containing her opinion that Plaintiff needs a cane due to pain. These explicit and inaccurate responses, seemingly through no fault of Dr. Gotanco's, are key and set apart the Commissioner's argument that the ALJ properly evaluated Dr. Voronov's medical opinion. *Cf. Chrisman on behalf of N.R.C. v. Bisignano*, -- F. 4th --, 2025 WL 1378001, at *5 (7th Cir. 2025) (finding ALJ properly relied on state agency medical opinions where despite plaintiff's argument that the agency doctors' opinions cannot be persuasive because they did not consider the child's toileting issues, the Seventh Circuit determined that both the first and second state agency doctors did in fact reference or review potty-training issues or records from pediatrician during relevant time period and finding no medical opinions in the record that contradicted the agency doctors' opinions). Here, by contrast to the *Chrisman* decision, the ALJ erred by relying on an incomplete assessment by a non-examining physician that relied on a specific reference to the lack of a medical source opinion and lack of a need for an assistive device in direct contrast to the treating physician's medical source statement to which the non-examining physician was not made privy. That evidence undermined the reasoning of the state agency doctor's opinion whose ground for finding Plaintiff could perform light work was at least, in part, based on the perceived lack of

10

a "medical opinion from any medical source" and that "based on all evidence received" Plaintiff did not have "any issues w/ ambulation or use of AD." (R. 125, 127); *See Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). This missing evidence contains significant and potential developments that reasonably could have changed the reviewing state agency consultant's assessment. *Baptist*, 74 F.4th at 443. For these reasons, the record does not support a finding of substantial evidence, and this matter must be remanded for further consideration.

By granting Plaintiff's motion for remand, the Court is not indicating that a particular result should be reached, for Plaintiff's case is not without weaknesses. The record should be developed further, not only on the issue of remand (i.e., a state agency consulting doctor or other medical expert review Dr. Voronov's statement that Plaintiff requires a cane to ambulate), but also on the issue of Plaintiff's work, albeit part-time, as a home care aide for his mother in light of his testimony that he had problems handling activities of daily living (*see* R. 15, referencing hearing testimony). Although the ALJ determined this work does not rise to SGA (R. 12), it may impact the activities of daily living analysis, while also mindful that the Seventh Circuit recognizes that plaintiffs may sometimes work beyond their capacity out of desperation and shall not be penalized for trying to work through their pain. *Czarnecki v. Colvin*, 595 F.App'x. 635, 644 (7th Cir. 2015).

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's request to reverse and remand the ALJ's decision (D.E. 15) and denies Defendant's motion for summary judgment (D.E. 18).

**SO ORDERED.**

                    **ENTER:**

*[signature]*

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: June 4, 2025**